UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                                :
**MARK BAEZ**,                                                  :
                                                                :
                              Petitioner,                       :
                                                                :     **MEMORANDUM DECISION AND**
              – against –                                       :     **ORDER**
                                                                :
                                                                :     20-CV-1669 (AMD)
**SUPERINTENDENT ROYCE**,                                       :
                                                                :
                              Respondent.                       :
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On October 19, 2020, the *pro se* petitioner, currently incarcerated at Green Haven

Correctional Facility, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

(ECF No. 5.)[1]  He challenges his conviction after a jury trial in Queens County Supreme Court of

first-degree robbery, and the misdemeanors of fifth-degree possession of stolen property, fourth-

degree possession of a weapon, and resisting arrest.  The court sentenced him as a predicate

violent felon to a determinate prison term of 25 years for the first-degree robbery and concurrent

one-year terms on the misdemeanors.  (ECF No. 11 at 973:17-22.)  The Appellate Division,

Second Department reduced the robbery sentence to 15 years, but otherwise affirmed the

conviction.  (State Court Record ("SR") 243–45, ECF No. 11-5.)[2]  *See People v. Baez*, 175

A.D.3d 553 (2d Dep't 2019).  On November 6, 2019, the New York Court of Appeals denied the

---

[1] This case was reassigned to me in February 2024.

[2] The respondent submitted the state court record in four separate filings (ECF Nos. 11-2, 11-3, 11-4, 11-
5), but with continuous pagination.  The Court's citations to the state court record use the continuous
pagination found at the bottom of each page, not the ECF page numbers in the header.

1

petitioner's application for leave to appeal.  (SR 283.)  *See People v. Baez*, 34 N.Y.3d 1015 (2019).

The petitioner filed a form petition in which he wrote "See Attached" in the areas designated for "Ground One," "Ground Two," and "Ground Three."  (ECF No. 5 at 6–8.)[3] Included in the attachments are copies of some of the state court record: the state habeas court's order denying the petitioner's 440.10 motion (*id.* at 18–19), an excerpt from the suppression hearing transcript (*id.* at 20–21), an Appellate Division order requiring the stenographer to file the transcripts and enlarging the appellant's time to perfect the direct appeal (*id.* at 22, 116), the Appellate Division's order denying the direct appeal (*id.* at 23–25), the petitioner's request for leave to the Court of Appeals (*id.* at 26–27), the trial court's order denying the petitioner's § 330.30 motion (*id.* at 28–30), the petitioner's counseled and *pro se* briefs on direct appeal (*id.* at 31–112), his motion for reargument of the Appellate Division's denial of his direct appeal (*id.* at 113–15), and a document labeled "radio transmission" and dated December 1, 2010 (*id.* at 117–18).  The Court construes the petition liberally to raise the claims that the petitioner asserted on appeal and in his 440.10 motion: (1) testimony about the victim's out-of-court identification violated due process; (2) the trial court should have suppressed the evidence recovered during the petitioner's arrest; (3) the police violated state law when they returned the victim's property; (4) the prosecutor did not correct false testimony and made improper comments in summation; (5) the prosecution withheld a police report in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (6) the verdict was against the weight of the evidence; and (7) the trial court did not instruct the jury that the prosecutor had to prove the petitioner's identity as the robber beyond a reasonable doubt.  For the following reasons, the petition is denied.

---

[3] Page citations to the petitioner's pleadings refer to the page numbers generated by ECF, which appear in the heading of each page.

# BACKGROUND

At approximately 10:00 p.m. on December 1, 2010, the petitioner robbed Christian Huacon at knife point. He held a 12-inch kitchen knife to Huacon's stomach, took his backpack, cell phone, and wallet, and fled. The petitioner went to trial in the Queens County Supreme Court before the Honorable Salvatore Modica and a jury. (T. Tr. 175.)[4] On January 25, 2013, a jury convicted him of the charges described above. (*Id.* at 914–17.)

## I.    Suppression Hearing

Before trial, the petitioner moved to suppress Huacon's identification, as well as the physical evidence that the arresting officers seized from the petitioner — the backpack and its contents, and Huacon's wallet. (H. Tr. 120–23.)

On June 19, 2012, the Honorable Steven W. Paynter held a *Mapp-Wade-Dunaway* hearing,[5] at which Huacon and NYPD Officer Sean Christian testified.

The evidence established that at about 10:30 p.m. on December 1, 2010, Officer Christian and two other officers were on patrol in Queens when they received a radio transmission of a knifepoint robbery at 64th Place and 74th Avenue, about four blocks from the 104th Precinct. (*Id.* at 60:14-19, 62:3-13, 64:13-15, 65:2.) A second radio transmission reported that the robbery occurred at 64-51 74th Avenue, and that the suspect was a "black male Hispanic" "wearing jeans

---

[4] "Tr." preceded by a date refers to the transcript of proceedings on that date. "H. Tr." refers to the transcript of the June 19, 2012 pretrial suppression hearing, "T. Tr." refers to the trial transcript, and "S. Tr." refers to the transcript of the July 19, 2013 sentencing proceeding. The respondent filed all state court transcripts in the same PDF file (ECF No. 11), so all transcript page citations refer to the PDF's page numbers.

[5] At a *Mapp* hearing, a court determines whether evidence was obtained in violation of the Fourth Amendment right to be free from unreasonable searches and seizures. *See Mapp v. Ohio*, 367 U.S. 643 (1961). At a *Wade* hearing, a court determines whether a witness's pretrial identification of the defendant involved impermissibly suggestive procedures. *See United States v. Wade*, 388 U.S. 218 (1967). A *Dunaway* hearing determines whether probable cause existed for an arrest. *See Dunaway v. New York*, 442 U.S. 200 (1979).

with a back pack [sic]" and a "gray hoody." (*Id.* at 51:2-11, 64:8-10.)[6] Officer Christian saw the petitioner, who "looked like a male Hispanic with a gray hoody, back pack [sic] with a cap on his head" walking on the sidewalk "all casual and stuff." (*Id.* at 51:20-21, 52:10-12.)[7] When another officer "beeped" the sirens, the petitioner "turned around and started running" away from them. (*Id.* at 53:10-12.) The officers apprehended the petitioner after a struggle and handcuffed him. (*Id.* at 55:8-13, 86:25–87:2.) The officers searched the petitioner's backpack and found a knife and a gray "basketball cap" with a red brim. (*Id.* at 84:20–85:5.)

In the meantime, Christian Huacon, the robbery victim, was with three other officers in an unmarked car, looking "for the person that robbed [him]." (*Id.* at 102:25–103:3.) He told the officers that the robber, who wore "a hat, a baggy hoody[ and] baggy clothes" and had a "goatee" and facial hair "on the sides of the face," stole Huacon's red and gray "North Face book bag," a Blackberry cell phone, and his wallet. (*Id.* at 107:8-24.) At one point, the officers stopped someone on the street, but Huacon told them that he was "not the person." (*Id.* at 109:14-16.) He then heard on the radio that another person had been stopped (*id.* at 110:16-18); the officers drove him to where Officer Christian and the other officers stopped the petitioner (*id.* at 110:5-8, 111:12-15), which was about eight blocks away from where the robbery occurred (*id.* at 103:25–104:10).

The petitioner was handcuffed, and there were police officers around him; at that point the petitioner was facing away from Huacon. (*Id.* at 56:7-11, 113:5–114:2.)[8] When the

---

[6] On cross-examination, Officer Christian testified that the second transmission described the suspect as "Male Hispanic between 18 to 24 years old, gray hoody, blue jeans, dark color jeans with a hoody over his head." (H. Tr. 66:13-21.)

[7] On cross-examination, Officer Christian testified that he did not remember if the petitioner was wearing a cap. (*Id.* at 73:14-22.)

[8] The "bright lights" of the police car were pointed at the petitioner. (*Id.* at 92:12-15.)

petitioner turned so that Huacon could see his face, Huacon recognized him as the man who robbed him.  (*Id.* at 116:2-10, 118:14-16).[9]  Huacon did not remember that anyone said anything before he identified the petitioner.  (*Id.* at 116:2-5, 118:2-5.)  Huacon "just saw the person's face," "recognized him," and told one or more of the officers that it "was the person that robbed [him]."  (*Id.* at 103:17-20, 116:7-10.)  At one point, a woman showed Huacon a Blackberry, without telling him where she got it.  (*Id.* at 114:9-11, 114:17-19.)  He unlocked the Blackberry and told the officers that it was his.  (*Id.* at 112:12-15.)  Another officer showed him a knife and asked if it was the weapon used to rob him; he said that it was.  (*Id.* at 115:8-10.)

Officer Christian arrested the plaintiff and took him to the precinct, where the petitioner "kept on fidgeting, kind of doing like a wiggling situation."  (*Id.* at 57:7-17.)  Officer Christian "grabbed his hands," and found Huacon's wallet in the petitioner's "lower back" area.  (*Id.* at 57:23–58:3-9.)

Judge Paynter denied the motions to suppress.  He found that the show-up was not unduly suggestive because it occurred in "close . . . spatial and temporal proximity" to the robbery.  (*Id.* at 127:15-18.)  He also concluded that the officers were "justified in attempting to stop the [petitioner]" "based upon the description and where the [petitioner] was observed and the circumstances that were encountered by the police," and because the petitioner fled when he saw the police, which "elevate[d] the level of suspicion."  (*Id.* at 126:18-22.)  The search of the backpack was justified because the stop was lawful, and because the petitioner did not establish standing to contest the search of the backpack.  (*Id.* at 127:8-11.)  Finally, "the recovery of the wallet was justified" because it was "property taken from an arrestee."  (*Id.* at 127:14-15.)

---

[9] It is not clear from the record whether Huacon identified the petitioner before or after an officer showed him the Blackberry and the knife.  In affirming the conviction, the Appellate Division wrote that the victim identified the petitioner "in the presence of recovered property."  (SR 244.)

## II.     Trial

### A.     The Prosecution's Case

At the trial, which began on January 15, 2013, the prosecution called Christian Huacon, his brother Alex Huacon, and Officer Christian.[10]   Their testimony established the following facts:

On December 1, 2010, the petitioner followed Christian Huacon for about 15 minutes, and then robbed him at knifepoint.  (*Id.* at 569:14-18, 570:2-8, 570:22–571:16.)  When Huacon looked at the petitioner's face, the petitioner said, "That wasn't a smart thing to do." (*Id.* at 573:17-18.)  He told Huacon to "look down and to give him everything [he] had." (*Id.* at 573:18-19.)  Huacon gave him his Blackberry cell phone in a blue case, his red, black and gray North Face backpack, and wallet with his identification card and a $20 bill.  (*Id.* at 574:4-16.) Huacon's work clothes — a shirt, shorts, and sandals — were also in the backpack.  (*Id.* at 573:24–574:1.)  The petitioner said, "I'm going to let you rock," and Huacon ran to his home, about "50 meters" away.  (*Id.* at 575:3-4, 576:7, 605:20-23.)  The entire incident took "probably five minutes[, l]ess than that."  (*Id.* at 574:23-25.)

Huacon told his mother, sister and brother that "[he] was robbed[] and to call the cops." (*Id.* at 576:5-8.)  He and his brother followed the petitioner, who was about a block and a half away, carrying Huacon's North Face backpack on his back.  (*Id.* at 576:14-17, 644:7-9.)  They followed him for about "[a]bout 20 minutes" (*id.* at 642:18-20) until the petitioner looked at them and started running (*id.* at 594:5-14).  Huacon and his brother chased the petitioner, but "lost track of him" after about two minutes.  (*Id.* at 594:15-19.)  Huacon's sister then picked

---

[10] Before the trial began, the court granted the petitioner's application to represent himself.  (*See* Nov. 13, 2012 Tr. 147–60; T. Tr. 176–87.)  The petitioner does not challenge that decision.

them up.  (*Id.* at 595:3.)  As they drove by a post office, they saw detectives with someone who had similar "characteristics" to the petitioner.  (*Id.* at 595:4-7.)  Huacon told the officers that the man was not the robber; the man "didn't have [Huacon's] stuff," "he was shorter" than the petitioner, and he "didn't have any facial hair."  (*Id.* at 626:16-22.)

Huacon got in the car with three officers and "started to look around that area."  (*Id.* at 597:1-2.)  Huacon told the officers that the robber wore "baggy clothes," a hoody, and a hat, and had "[d]ark skin complexion" and "looked like African American."  (*Id.* at 595:8-13, 595:16-25.)  Huacon also described what was stolen.  (*Id.* at 13-15.)  The officers then "got a call from a radio saying [other officers] had found the guy with the same descriptions," so they drove to the other officers' location.  (*Id.* at 597:20-21.)

In the meantime, Officer Christian, his sergeant, and another officer were in an unmarked car outside the 104th Precinct when they heard the radio transmission of a knifepoint robbery at 64th Place and Myrtle Avenue.  (*Id.* at 667:8, 668:4-16, 701:10-13.)  As the officers canvassed the area, they received a second radio call stating that the robbery took place at 64-51 74th Avenue (*id.* at 701:8-13) and that the robber was "a male black Hispanic, olive complexion," with "a gray hoody, dark-colored jeans, black sneakers, and a backpack on his back" (*id.* at 669:12-19).  Officer Christian saw the petitioner, who "fit[] the description" (*id.* at 670:4-14), walking down a "one-way desolate street" (*id.* at 670:16-17).  The petitioner was wearing a "[g]ray hoody, dark-colored jeans, black sneakers with a hoody . . . partially up like over his head."  (*Id.* at 670:19-21.)  He also had "straps on his back."  (*Id.* at 672:9-10.)

Another officer "flipped the lights on . . . and beeped the horn a couple of times just to get [the petitioner's] attention."  (*Id.* at 672:13-14.)  The petitioner "paused, looked at [the officers]" from "a semi crouched position," "started slowly walking backwards" and then

"turned and ran," his gray backpack "jerking up and down." (*Id.* at 672:14-22, 678:16, 679:18-20.) The officers followed him in the car, and then Officer Christian and the sergeant chased him on foot. (*Id.* at 680:4-8.) When they caught up to him, the petitioner "basically squared up in front of us in a defensive . . . posture," with "both hands raised about shoulder level." (*Id.* at 680:15-20.) The officers were able to handcuff the petitioner after a struggle. (*See id.* at 682:1-3, 682:13-24, 683:1-2.) Because the radio run had been for a knifepoint robbery, they removed the backpack "in case it had a weapon" "[a]s a safety thing." (*Id.* at 683:14-19.) The sergeant unzipped the bag, which contained a 12-inch "brown wooden handle kitchen knife." (*Id.* at 684:6-9.)[11]

Huacon arrived shortly thereafter and identified the petitioner, who was standing between two officers, with the car's high beam lights shining on him. (*Id.* at 598:1-4, 630:14-15, 755:20-25.)[12] He was "certain" that the petitioner was the man who robbed him. (*Id.* at 598:17-24.) One officer showed him a Blackberry cell phone with a blue case, and asked if it was his. (*Id.* at 600:7-8.) Huacon "told her that it had a password lock," and unlocked the phone; the phone "had a picture of [Huacon] on the profile, on the home screen." (*Id.* at 600:8-11.) Another officer showed him the knife, which he identified as the weapon the petitioner used to rob him. (*Id.* at 611:24–612:3.) Huacon's brother Alex "got near" the petitioner and asked, "Why did you do that to my brother?" (*Id.* at 647:5-10.)[13]

---

[11] Officer Christian did a patdown search of the petitioner's outer clothing but did not feel anything. (T. Tr. 758:22–759:15.)

[12] Officer Christian did not conduct a line-up because he "[knew] this was the person" based on the radio description of the robbery suspect and the items recovered from the petitioner, "like the [victim's] ID, the knife, the cell phone, the hat." (*Id.* at 752:23–754:7.)

[13] Alex Huacon "saw the detectives had found" the man that he and Huacon had been following, but nothing in the record suggests that he made a formal identification at the scene. (*Id.* at 646:23-24.)

Once at the precinct, the petitioner "kept on fidgeting," so Officer Christian "grabbed his hand" and retrieved a wallet with "a picture ID of Christian Huacon, $20, a MetroCard, and a debit card." (*Id.* at 686:7–687:3, 687:20-21.) Officer Christian photographed the wallet and backpack, which contained "the cell phone, a hat, [phone] charger, a football and a T-shirt" (*id.* at 688:21-23) and returned them to Huacon that night. (*Id.* at 688:1-3, 689:11-17.)[14]

Huacon could not identify the petitioner at trial "[b]ecause so much time ha[d] gone by," and because the robbery was the only time that he had seen the petitioner (*Id.* at 575:15-22, 615:19-23). However, he was "certain" that the man he identified shortly after the robbery was the person "who had put the knife to [his] stomach" and "robbed [him]." (T. Tr. 598:17-24.)[15] Alex Huacon identified the petitioner as the person he and the victim followed on the night of the robbery (*id.* at 643:8-19), although at the time of the robbery, the petitioner was "thinner" with "short hair" and a "shorter beard" (*id.* at 645:18-23).

The prosecutor also introduced the photographs of the property that the police recovered from the petitioner after his arrest: the Blackberry, and the backpack and its contents, including the wallet and clothing. Huacon identified his property from the photographs. (*Id.* at 601:1–602:22.)

The petitioner moved for a trial order of dismissal pursuant to New York Criminal Procedure Law ("C.P.L.") § 290.10(1) on the basis that the prosecution did not present legally sufficient evidence of his guilt. (*Id.* at 773:20–774:10.)[16] The court denied the motion, finding

---

[14] At the precinct, the petitioner made an exculpatory videotaped statement which the prosecution did not offer into evidence at trial. (Dec. 2, 2010 Tr. 2:13-20.)

[15] Officer Christian testified that Huacon identified the petitioner shortly after the robbery. (T. Tr. 685:13-14.)

[16] At the close of the prosecution's case, the court asked the petitioner if he wanted to make a motion to dismiss, and explained, "That's a motion made at the end of the People's case. When the People rest, the defendant . . . makes a motion to dismiss because the People failed to present a prima facie case.

that the prosecution "presented legally sufficient evidence as to the charges, not just any lesser included offense."  (*Id.* at 774:25–775:2.)

### B.     The Defense's Case

The defense did not put on any evidence.  (*Id.* at 814:1-5.)

### C.     Jury Charge

As part of his final charge, Justice Modica instructed the jury that "[p]roof of guilt beyond a reasonable doubt is proof that leaves you so firmly convinced of the defendant's guilt that you have no reasonable doubt of the existence of any element of the crime, or of the defendant's identity as the person who committed that crime."  (*Id.* at 871:10-14.)  He also charged, "Remember, if after careful consideration you're not satisfied that the identity of the defendant as the person who committed the charged crime has been proven beyond a reasonable doubt, you must find the defendant not guilty of that charged crime."  (*Id.* at 881:2-6.)

### D.     Verdict and Sentence

On January 25, 2013, the jury convicted the petitioner of first-degree robbery, fifth-degree possession of stolen property, resisting arrest, and fourth-degree criminal possession of a weapon.  (*Id.* at 914–17.)

The petitioner moved to set aside the verdict pursuant to C.P.L. § 330.30.  (*See* ECF No. 5 at 28.)  He argued that the prosecution did not give him timely notice that it intended to use his videotaped statement or Christian and Alex Huacon's identifications of him.  (*Id.* at 28–29.)  He also challenged the show-up and claimed that the prosecution "engaged in prosecutorial

---

That means your argument would be, they didn't present legally sufficient evidence that you committed the charges. . . . You're making that motion at this time, correct?"  (*Id.* at 774:1-9.)  The petitioner answered, "Yes."  (*Id.* at 774:10.)

misconduct," violated its discovery obligations and violated *Brady v. Maryland*.  (*Id.* at 29–30.)

Finally, he claimed that the verdict was based on "legally insufficient evidence."  (*Id.*)  The court

denied the motion, finding that the prosecutor gave the defense timely statement and

identification notice, and in any event, did not introduce the statement at trial.  (*Id.* at 28–30.)

The court did not have jurisdiction "to review a suppression determination of another court,"

rejected the *Brady* and prosecutorial misconduct claims as "devoid of any specific facts," and

found "no basis" on which to find that the trial evidence was not legally sufficient to establish his

guilt.  (*Id*.)

On March 18, 2013, the court arraigned the petitioner "as a predicate felon or second

felony offender" pursuant to New York Penal Law § 70.04, based on his 2003 conviction for

attempted robbery in the second degree.  (Mar. 18, 2013 Tr. 928:20–929:8.)[17]  On July 19, 2013,

Justice Modica sentenced the petitioner as a predicate violent felon to a determinate sentence of

25 years, followed by five years of post-release supervision.  (*Id.* at 973:15-22).[18]

## PROCEDURAL HISTORY

### I.    Direct Appeal

The petitioner, represented by counsel, appealed his conviction to the Appellate Division,

Second Department.  (*See* SR 56–133.)  He argued that the show-up identification procedure was

unduly suggestive and violated due process (*id.* at 85–91), that the court should have suppressed

the evidence recovered after his arrest (*id.* at 91–96), and that the trial court should have given an

adverse inference charge and precluded introduction of photographs of the victim's property

---

[17] The petitioner "objected" to the arraignment and refused to participate in the predicate felony hearing or the sentencing.  (*See* Mar. 18, 2013 Tr. 931; May 14, 2013 Tr. 934–60.)

[18] Justice Modica imposed concurrent one-year sentences for the three misdemeanors.  (July 19, 2013 Tr. 973:17-22.)

because the police did not give the defense the opportunity to examine it, in violation of New

York Penal Law § 450.10 (*id.* at 96–104).  He also argued that his sentence was excessive.  (*Id.*

at 105–11).

The petitioner filed a *pro se* supplemental brief in which he challenged the arrest and

subsequent search (*id.* at 191–94), claimed that the prosecutor knowingly permitted witnesses to

testify falsely (*id.* at 195–97), and that the prosecutor denigrated the defense, vouched for

witnesses' credibility, and appealed to the jurors' sympathies in her summation (*id.* at 198–205).

On August 21, 2019, the Appellate Division reduced the petitioner's sentence on the first-

degree robbery conviction to a determinate 15-year term, but otherwise affirmed the conviction.

(*Id.* at 243–45.)  *See People v. Baez*, 175 A.D.3d 553 (2d Dep't 2019).  The court found that the

show-up identification was not unduly suggestive because Huacon identified the petitioner in

sufficiently "close spatial and temporal proximity" to the robbery — 30 minutes after and eight

blocks away.  (SR 244.)  The Appellate Division upheld the trial court's determination not to

"preclude testimony or deliver an adverse inference charge" about the § 450.10 violation because

the petitioner suffered no prejudice.  (*Id.*)

The Appellate Division also rejected the petitioner's challenge to the lawfulness of his

arrest.  (*Id.*)  The court found that the officers had reasonable suspicion to stop the petitioner

based on the radio transmissions about the robbery, and probable cause to arrest him after he ran

from the officers and then tried to fight them.  (*Id.*)  Finally, the court determined that the

petitioner did not preserve his challenge to the suppression decision or to the prosecutor's

comments in summation (*id.* at 244–45 (citing N.Y. C.P.L. § 470.05(2)), and that the claims

were meritless in any event (*id.*).

The Appellate Division denied the petitioner's *pro se* motion to reargue (*id.* at 271), and on November 16, 2019, the New York Court of Appeals denied the petitioner's application for leave to appeal (*id.* at 283).  *See People v. Baez*, 34 N.Y.3d 1015 (2019).

## II.    Rule 440 Motion

In February 2018, while his direct appeal was pending, the petitioner moved *pro se* to vacate the judgment of conviction, pursuant to C.P.L. § 440.10.  (*See* SR 1–41.)  The petitioner argued that the prosecutor withheld a 911 Sprint report in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *People v. Rosario*, 9 N.Y.2d 286 (1961),[19] that the verdict was against the weight of the evidence, that the trial court did not instruct the jury that the petitioner's identity as the robber had to be proved beyond a reasonable doubt, that the physical evidence should have been suppressed, and that the prosecutor "knowingly present[ed] false [e]vidence and statements" at trial.  (*Id.* at 4–8, 18.)

Queens County Supreme Court Justice Evelyn L. Braun denied the motion on July 3, 2018.  (*Id.* at 53–55.)  The court held that the petitioner's suppression, weight of the evidence, prosecutorial misconduct, and jury instruction claims could be raised only on direct appeal because they were based on matters that were on the record.  (*Id.* at 55.)  The court also determined that the prosecutor "conclusively refuted" the petitioner's *Brady*/*Rosario* claim with documentary evidence showing that the prosecution disclosed the Sprint report to defense counsel more than six months before the trial.  (*Id.*; *see also id.* at 52.)

---

[19] The Sprint report is a summary of the 911 calls and the radio runs from the night of the robbery.  (T. Tr. 210:20-21.)

13

The petitioner did not seek leave to appeal this decision and acknowledges that his "time to appeal ran out."  (ECF No. 5 at 7.)[20]

## LEGAL STANDARD

### I.    Merits Review and AEDPA Deference

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to a state court judgment may seek a writ of habeas corpus on the grounds that he is being held "in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a).  Federal habeas relief may be obtained only for a violation of federal law; "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991); *see also Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.").  Therefore, "[a] claim that a state conviction was obtained in violation of state law is not cognizable in the federal court."  *Howard v. Walker,* 406 F.3d 114, 121 (2d Cir. 2005); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) ("It is well established that a federal habeas court does not sit to correct a misapplication of state law . . . .").

---

[20] On May 7, 2021 — after the petitioner filed the petition in this action and the respondent filed an answer — the petitioner perfected a state petition for a writ of error coram nobis, challenging the effectiveness of his appellate counsel.  (*See* ECF No. 16 at 1.)  On May 27, 2021, the petitioner filed a letter to the Court requesting that his petition be held in abeyance until the Appellate Division decided the state coram nobis petition.  (*Id.*)  On August 22, 2022, the respondent opposed the petitioner's request because he had not shown "good cause" for not exhausting this state court remedy earlier, or explained how the unexhausted claims in the state coram nobis petition were not "plainly meritless."  (ECF No. 25 at 3 (citing *Rhines v. Webber*, 544 U.S. 269, 275, 277 (2005)).)  On July 11, 2023, Judge Gujarati, to whom the case was then assigned, denied the petitioner's request without prejudice because he "ha[d] not demonstrated good cause for his failure to exhaust."  (*ECF Order dated July 11, 2023* (citing *Ramirez v. Superintendent of Shawangunk Corr. Facility*, No. 17-CV-7185, 2019 U.S. Dist. LEXIS 131957, at *11 (S.D.N.Y. Aug. 6, 2019)).)

14

AEDPA provides in relevant part,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1).  For the purposes of federal habeas review, "clearly established law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is deemed "contrary to," or an "unreasonable application of," clearly established federal law if the decision (1) is contrary to Supreme Court precedent on a question of law, (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts, or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case.  *Id.* at 412–13.

This deferential standard of review ("AEDPA deference") applies only with respect to federal claims that were "adjudicated on the merits" in a state court proceeding.  28 U.S.C. § 2254(d).  A state court adjudicates a federal claim on the merits when it "disposes of the claim on the merits" and "reduces its disposition to judgment."  *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)).  When multiple state courts consider a case, including on direct appeal, this Court reviews the last state court decision that explains its reasoning, even if a higher court reviewed the case.  *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.").

When there is an adjudication on the merits, AEDPA deference "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam); *see also Sellan*, 261 F.3d at 312 ("When a state court [adjudicates a federal claim on the merits], a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim — even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."). In other words, the state court's application of federal law cannot be merely incorrect, it must be objectively unreasonable. *Schiro v. Landrigan*, 550 U.S. 465, 473 (2007). Accordingly, a district court may overturn a state court's application of federal law only if it is so erroneous that there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Schriro*, 550 U.S. at 473 (noting that whether a state court's determination was unreasonable is "a substantially higher threshold" than whether the determination was incorrect).

## II.    Exhaustion Requirements and Procedural Default

Before a federal court considers the merits of a habeas petition, it must ensure that the petition complies with AEDPA's procedural requirements. Under 28 U.S.C. § 2254(b)(1)(A), a habeas petition "shall not be granted unless it appears that . . . the [petitioner] has exhausted the remedies available in the courts of the State . . . ." A petitioner does so by "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court of both the factual and legal bases for the federal claim." *Diguglielmo v. Senkowski*, 42 F. App'x 492, 494 (2d Cir.

16

2002) (citing *Picard v. Connor*, 404 U.S. 270, 276–77 (1971); *Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 191–92 (2d Cir. 1982) (en banc)).

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).  In that situation, the petitioner "has procedurally defaulted his claims." *O'Sullivan v. Boerckel*, 526 U.S. 838, 854 (1999).  Moreover, when a petitioner does not exhaust his claims in state court and the state court to which he must present those claims would now find them procedurally barred, the federal court must deem the claims exhausted but procedurally defaulted. *See Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citing *Coleman*, 501 U.S. at 735 n.1); *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." (citations omitted)).  These defaulted claims are by definition exhausted because a petitioner would no longer have any "remedies available in the courts of the State" within the meaning of 28 U.S.C. § 2254(b). *See also* 28 U.S.C. § 2254(c) ("A [petitioner] shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

"For a procedurally defaulted claim to [be considered on habeas review], the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice . . . ." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 748–50); *see also Gonzalez v. Sullivan*, 934 F.2d 419, 421 (2d Cir. 1991) ("[A] petitioner seeking habeas relief may not raise a claim upon which he has

17

procedurally defaulted in the state courts unless he is able to show cause for the default and prejudice resulting therefrom." (citations omitted)).   The errors of which the petitioner complains must have caused "actual prejudice" that "resulted in 'substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions," *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982); *Murray v. Carrier,* 477 U.S. 478, 494 (1986)).   A fundamental miscarriage of justice must be shown by "credible and compelling claim of actual innocence."   *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019). Procedural default and the attendant cause and prejudice standards apply regardless of whether the default occurred at trial, on appeal, or on state collateral review.   *Carrier*, 477 U.S. at 490– 92.

### III.   Independent and Adequate State Law Grounds

A federal habeas court has no authority to "evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"   *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Coleman*, 501 U.S. at 729).   "The rule applies with equal force whether the state-law ground is substantive or procedural."   *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (citing *Coleman*, 501 U.S. at 729).

Generally, claims that the state court rejects on state procedural grounds are dismissed independently of federal constitutional law and rest on adequate grounds if the procedural bar "is firmly established and regularly followed by the state in question in the specific circumstances presented in the instant case."   *Murden v. Artuz*, 497 F.3d 178, 193 (2d Cir. 2007) (citing *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006)); *see also Epps v. Comm'r Corr. Servs.*, 13 F.3d 615, 617 (2d Cir. 1994) ("[F]ederal habeas courts generally may not review a state court's denial

of a state prisoner's federal constitutional claim if the state court's decision rests on a state procedural default that is independent of the federal question and adequate to support the prisoner's continued custody.").  However, federal courts will consider a habeas claim despite a state procedural bar if the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Green*, 414 F.3d at 294 (quoting *Coleman*, 501 U.S. at 750).

## IV.    Relevant New York State Procedural Rules

In New York, a criminal defendant is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals."  *Aparicio,* 269 F.3d at 91 (citing N.Y. C.P.L. § 450.10(1); N.Y. Court R. § 500.10(a)); *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (explaining New York State's appellate review process).  A defendant has 30 days to file a timely notice of appeal, *see* N.Y. C.P.L. § 450.60(1), and failure to raise a claim on direct review bars future collateral review of that claim in state court, N.Y. C.P.L. § 440.10(2)(c).

New York appellate courts review a claim only if the defendant preserved it at the trial level.  For example, a defendant can preserve a question of law for appellate review by registering a timely objection at trial.  *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007).  The "contemporaneous objection rule," N.Y. C.P.L. § 470.05(2), provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same."  *See also, e.g.*, *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) ("'[A]ny matter which a party wishes' to preserve for appellate review [must] be 'brought to the attention

of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error.'" (quoting *People v. Luperon,* 85 N.Y.2d 71, 78 (1995))).  A "general objection is not sufficient;" the defendant must "specifically focus on the alleged error" in order to preserve the claim.  *Garvey*, 485 F.3d at 714 (collecting cases).

New York also permits a defendant to attack a conviction collaterally by filing a motion to vacate judgment under C.P.L. § 440.10.  *Ortiz v. Heath*, No. 10-CV-1492, 2011 U.S. Dist. LEIS 37336, at *17 (E.D.N.Y. Apr. 6, 2011).  440.10 motions are limited to claims that do not appear on the record.  *See* N.Y. C.P.L. § 440.10(1)(f), (2)(b); *see also, e.g.*, *People v. Mower*, 97 N.Y.2d 239, 245–46 (2002) ("Because defendant's claim does not involve factual matters beyond the scope of the record . . . , it was not the proper subject of a CPL 440.10 motion."). Therefore, a state court must deny a 440.10 motion premised on a judgment which "at the time of the motion[] [is] appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."  N.Y. C.P.L. § 440.10(2)(b).

A criminal defendant may seek leave to appeal the denial of a 440.10 motion by applying to the Appellate Division.  Once the Appellate Division denies leave to appeal, the defendant has "reached the end of the road within the state system" for his post-conviction motion.  *Walker v. Graham*, 955 F. Supp. 2d 92, 102 (E.D.N.Y. 2013) (quoting *Klein v. Harris*, 667 F.2d 274, 284 (2d Cir. 1981), *overruled on other grounds*, *Daye*, 696 F.2d at 195).

A defendant must apply for leave to appeal the denial of a 440.10 motion within 30 days of being served with the trial court's decision.  *See Thomas v. Greiner*, 111 F. Supp. 2d 271, 276 (S.D.N.Y. 2000) (citing N.Y. C.P.L. § 460.10(4)).  A defendant who does not follow this procedure "has failed to exhaust his state remedies even if he presented the claim at the trial

level." *Klein*, 667 F.2d 274 at 283–84 (quoting *Williams v. Greco*, 442 F. Supp. 831, 833

(S.D.N.Y. 1977)); *cf. Thomas*, 111 F. Supp. 2d at 276 (passage of more than 30 days from denial

of 440.10 motion without appeal bars consideration on federal habeas review (citing *DeVito v.

Racette*, No. 91-CV-2331, 1992 U.S. Dist. LEXIS 12059, at *8–10 (E.D.N.Y. Aug. 3, 1992)).

## DISCUSSION

### I.     Non-Cognizable Claims

Three of the petitioner's claims for relief are not cognizable on federal habeas review:

the claimed violation of New York Penal Law § 450.10 and the weight of the evidence claim are

matters of state law over which the Court lacks jurisdiction, and the Fourth Amendment claims

are precluded from review pursuant to *Stone v. Powell*, 428 U.S. 465 (1976).

### A.     State Law Claims

Federal habeas relief "does not lie for errors of state law" because reexamining "state-

court determinations on state law questions" is not the province of the district court.  *Estelle*, 502

U.S. at 67–68.  A federal court may review an error of state law only if the error implicates a

federal constitutional right.  *See Wainwright*, 464 U.S. at 86; *Headley v. Tilghman*, 53 F.3d 472,

474 (2d Cir. 1995).  The petitioner's claims about state law violations do not implicate any

federal constitutional right; accordingly, habeas review is not available.

### 1.     Violation of N.Y. Penal Law § 450.10

The petitioner argues that the trial judge should have either given an adverse inference

charge or imposed other sanctions because the police returned the victim's property to him in

violation of § 450.10.  This is a claim of purely state law which the Court cannot review, and

must be dismissed.  *See, e.g.*, *Reyes v. Connolly*, No. 07-CV-2468, 2010 U.S. Dist. LEXIS

78139, at *11–12 (E.D.N.Y. July 30, 2010) (rejecting similar claim because a violation of §

450.10 is a state law matter that cannot be reviewed by a federal habeas court and, alternatively, did not amount to due process violation).

### 2.    Weight of the Evidence

In his 440.10 motion, the petitioner argued that the jury's verdict was "against the weight of the credible evidence and in the interests of justice, a new trial should be required." (ECF No. 5 at 17; SR 5.) Weight of the evidence claims are governed by C.P.L. § 470.15(5), and are purely matters of state law, as opposed to legal sufficiency claims, which are based on federal due process principles. *See Correa v. Duncan*, 172 F. Supp. 378, 381 (E.D.N.Y. 2001) (citations omitted). The petitioner contests only the weight of the evidence, not its sufficiency, and accordingly does not assert a federal claim under 28 U.S.C. § 2254(a). *Id.* Moreover, it is the jury's exclusive province to determine the weight and credibility of evidence, and a habeas court must defer to those assessments. *See Douglas v. Portuondo*, 232 F. Supp. 106, 115–16 (S.D.N.Y 2002) (citations omitted). Habeas review is thus not available, and the petitioner's weight of the evidence claim is dismissed.

### B.    Fourth Amendment Claims

The petitioner's claims that he was arrested without probable cause and that the trial court should have suppressed physical evidence are not cognizable on federal habeas review.

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991); *Canteen v. Smith*, 555 F. Supp. 2d 407, 416 (S.D.N.Y. 2008). *Stone* permits habeas review of Fourth Amendment claims only "(a) if the state has provided no

corrective procedures at all to redress the alleged [F]ourth [A]mendment violations; or (b) if the state has provided a corrective mechanism, but the [petitioner] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *see also Gates v. Henderson*, 568 F.2d 830, 839 (2d Cir. 1977) ("[A]ll that the [Supreme] Court required [in *Stone*] was that the state should have provided the *opportunity* to the state prisoner for a full and fair litigation of the Fourth Amendment claims."), *cert. denied*, 434 U.S. 1038 (1978).

The petitioner has not established that either exception applies.  The Second Circuit has approved New York's pretrial suppression hearing procedure as "facially adequate." *See Capellan*, 975 F.2d at 70 n.1 (citations omitted); *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989); *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987) (citing N.Y. C.P.L. § 710).  The petitioner availed himself of this process when he moved to suppress the physical evidence as the fruit of an unlawful search and seizure.  The court held a hearing and denied the motion.[21]  Accordingly, New York law provided appropriate procedures to address his Fourth Amendment claims, and *Stone* bars his claim. *Cf. Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate [his] Fourth Amendment claim . . . , the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief.").

---

[21] This claim is also barred because the Appellate Division denied it on adequate and independent state law grounds.  The Appellate Division rejected the claim as unpreserved for appellate review because the petitioner did not object or otherwise raise this contention at the trial level.  (*See* SR 244 (citing N.Y. C.P.L. § 470.05(2)).) *See, e.g.*, *Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007) (recognizing New York's contemporaneous objection rule as an adequate and independent state ground barring habeas review); *People v. Brooks*, 26 A.D.3d 739, 740 (4th Dep't 2006) (applying contemporaneous objection rule to suppression motions).

Nor was there an "unconscionable breakdown" of the suppression hearing, as the petitioner maintained below.  He argued on direct appeal and appears to claim in his petition that there was no evidence that police recovered the stolen property lawfully, and that his lawyer was ineffective.  (*See* ECF No. 5 at 66–69, 94; ECF No. 17 at 44–47.)  Even if the petitioner were correct, however, neither claim would establish an unconscionable breakdown sufficient to warrant habeas review.  *See Crenshaw v. Superintendent, Five Points Corr. Fac.*, 372 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (finding that the petitioner's "assertions that the state courts were incorrect and defense counsel incompetent do not constitute the sort of 'breakdown'" that would permit federal habeas review of a Fourth Amendment claim); *see also Capellan*, 975 F.2d at 71 ("unconscionable breakdown" inquiry focuses on "the existence and application of the corrective procedures themselves," not "the correctness of the outcome resulting from the application of adequate state court corrective procedures"); *Gayot v. New York*, No. 19-CV-4657, 2022 U.S. Dist. LEXIS 17009, at *64 (E.D.N.Y. Jan. 31, 2022) (collecting cases in which claims of ineffectiveness during suppression hearings did not establish "the sort of unconscionable breakdown necessary for the Court to address [the petitioner's] Fourth Amendment claim").

Accordingly, the Fourth Amendment claims are barred by *Stone* and must be dismissed.

## II.     Procedurally Barred Claims

### A.     *Brady* Claim

In his 440.10 motion, the petitioner claimed that the prosecution did not disclose the Sprint report before trial.  (*See* ECF No. 5 at 17; SR 3–5.)  In denying the 440.10 motion, the trial court found that this claim was "conclusively refuted by unquestionable documentary proof" (ECF No. 5 at 17):  a discovery letter, signed by the petitioner's attorney, listing the materials, including the Sprint report, that the prosecution produced to the defense (SR 52).

24

The petitioner concedes that he did not seek leave to appeal the 440.10 decision because his time "ran out." (ECF No. 5 at 5.) *See Greiner*, 111 F. Supp. at 276 (a defendant must apply for leave to appeal a denial of a 440.10 motion within 30 days of being served with the decision). Although state court remedies are technically exhausted when they are no longer available, regardless of the reason for their unavailability, the petitioner cannot claim that he exhausted his state remedies if he had additional remedies that he did not exercise. *Galdamez v. Keane*, 394 F.3d 68, 73–74 (2d Cir. 2005) (a petitioner who let the time limitation for filing appeal lapse and therefore had no available state remedies cannot be said to have "fairly presented" his claim (citing *O'Sullivan*, 526 U.S. at 848)).

Because the petitioner did not avail himself of the opportunity to seek leave, he is barred from pursuing further review of his *Brady* claim in state court. *See, e.g.*, *People v. Ferraro,* 169 A.D.2d 732, 732 (2d Dep't 1991) ("Since the defendant failed to timely move for leave to appeal from the order denying his post-judgment motion pursuant to CPL 440.10 to vacate the judgment, his appeal from the order is dismissed."). Accordingly, the petitioner's *Brady* claim is "deemed exhausted" for purposes of federal habeas review but is nevertheless procedurally defaulted. *See Thomas*, 111 F. Supp. 2d at 276–77 (collecting cases).

Nor has the petitioner demonstrated good cause for the default or that he was prejudiced. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citing *Teague v. Lane*, 489 U.S. 288, 298 (1989)). The petitioner does not explain why he let the 30-day application window lapse, but even if he had argued cause, he could not demonstrate actual prejudice because there was no *Brady* violation, as the state court found. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must

25

have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.").

Accordingly, the petitioner's *Brady* claim is dismissed.

### B.        Jury Instruction Claim

The petitioner argues that the trial court did not instruct the jury that the prosecutor had to prove his identity as the robber beyond a reasonable doubt.  (SR 5.)  The petitioner made this argument in his 440.10 motion; the claim is therefore exhausted but procedurally defaulted, as explained above.  Moreover, the state court denied this claim because it was not cognizable under C.P.L. § 440.10(2)(b), which requires the court to deny the motion when the conviction is pending on appeal and "sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."[22]

The petitioner's direct appeal was pending before the Appellate Division when he filed the 440.10 motion.  The court, therefore, properly denied the motion under C.P.L. § 440.10(2)(b).  The petitioner did not challenge the jury instruction in his appellate filings, which were made after the lower court denied the 440.10 motion.  At this point, there is no remedy in state court for this claim.  *Aparicio*, 269 F.3d at 91 (citing N.Y. C.P.L. § 450.10(1)).

Nor has the petitioner shown cause or prejudice.  Indeed, the trial record demonstrates that the judge instructed the jury that the prosecutor had to prove the petitioner's identity as the robber beyond a reasonable doubt.  (*See* T. Tr. 871:10-14, 881:2-6.)  Therefore, this claim is dismissed.

---

[22]  The trial court denied the petitioner's suppression, weight of the evidence, and prosecutorial misconduct claims for the same reason.

### C.    Prosecutorial Misconduct Claims

The petitioner made two prosecutorial misconduct claims in his state court filings.  In the 440.10 motion, he argued that the prosecutor did not correct Officer Christian's allegedly false testimony that the petitioner's clothing matched the description of the robber in the radio run (SR 18), a claim that he also made in the *pro se* supplemental appellate brief (SR 195–97).[23] Also in the *pro se* supplemental brief, he claimed that the prosecutor denigrated the defense in summation by saying that the petitioner was "guilty" 18 times, vouched for witnesses' credibility and appealed to the jurors' emotions.  (*Id.* at 198–205.)  The Appellate Division found that the petitioner did not preserve these claims for appellate review because he did not object at trial (*id.* at 245 (citing N.Y. C.P.L. § 470.05(2)), but that in any event, the claims were meritless (*id.*).

Section § 470.05(2), the "contemporaneous objection" rule, is a firmly established state procedural rule that is an independent and adequate state-law ground.  *See, e.g.*, *Osborne v. Ohio*, 495 U.S. 103, 123 (1990); *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (collecting cases). New York courts regularly apply this rule to the same type of prosecutorial misconduct claims presented here.  *See, e.g.*, *People v. Ragen*, 140 A.D.3d 1092, 1092–93 (2d Dep't 2016) (not correcting false testimony); *People v. Hollenquest*, 48 A.D.3d 592, 593 (2d Dep't 2008) (misconduct on summation).  Accordingly, the Court has no authority to review the Appellate Court's decision unless the petitioner demonstrates cause and prejudice, and he has made no effort to do so here.  Therefore, the prosecutorial misconduct claims are procedurally barred on independent and adequate state law grounds and must be dismissed.

---

[23] The petitioner argued that it "was never proven [that] [he] fit the radioed description" of the suspect, that Officer Christian's trial testimony about the description he heard over the radio was different from his suppression hearing testimony, and that the Sprint report said the description was "unknown."  (ECF No. 5 at 100–03; SR 195–97; *cf.* T. Tr. 210:20-21 (the court explaining that the Sprint report was "a summary of the 911 calls" and "the radio runs" from the night of the incident).)

### III.    Merits Review of Suggestive Identification Claim

The only ground for relief not barred from habeas review is the suggestive identification claim.  The petitioner argues that the court should have suppressed the victim's show-up identification and that the Appellate Division's decision to uphold that ruling was an unreasonable application of clearly established federal law.  (*See* ECF No. 5 at 60–66; ECF No. 17 at 20 (citing *Perry v. New Hampshire*, 565 U.S. 228 (2012); *Neil v. Biggers*, 49 U.S. 188 (1972)).)  Because the Appellate Division ruled on the merits of the petitioner's claim, AEDPA deference applies.  *See* 28 U.S.C. § 2254(d); *Renico*, 559 U.S. at 773 (explaining that AEDPA "demands that state-court [adjudications on the merits] be given the benefit of the doubt").

### A.    Federal Law Governing Show-up Identification Procedures

When the prosecution seeks to "offer testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that the identification testimony be reliable."  *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001); *see also Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) ("Reliability is the touchstone for the admission of eyewitness identification testimony pursuant to the Due Process Clause of the Fourteenth Amendment.").  Due process concerns arise "only when law enforcement officers use an identification procedure that is both suggestive and unnecessary."  *Perry*, 565 U.S. at 238–39 (citing *Manson v. Brathwaite*, 432 U.S. 98, 107, 109 (1977); *Biggers*, 409 U.S. at 198).

Impermissibly suggestive procedures do not automatically require the exclusion of identification evidence.  *Id.* at 239; *see Brathwaite*, 432 U.S. at 113 (when an "identification is reliable despite an unnecessarily suggestive [police] identification procedure," automatic exclusion "is a Draconian sanction" "that may frustrate rather than promote justice").  Instead, due process requires courts to assess each case on its facts to determine whether an identification

procedure was unduly or unnecessarily suggestive. *Perry*, 565 U.S. at 239; *see Simmons v. United States*, 390 U.S. 377, 384 (1968) (describing impermissibly suggestive procedure as one that, considering the totality of the circumstances, gives rise to "very substantial likelihood of irreparable misidentification").[24]

Show-up identification procedures are "inherently suggestive because [they] involve[] the presentation of a single suspect to a witness by the police (as opposed to a lineup, in which several individuals are presented to the police, only one of whom is the suspect)." *Brisco*, 565 F.3d at 88. However, show-ups may be necessary "to quickly confirm the identity of a suspect, or to ensure the release of an innocent suspect." *Id.* These "[e]xigent circumstances generally weigh in favor of concluding that a showup identification procedure was not unnecessarily suggestive." *Id.*; *see, e.g.*, *United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994) ("[A] prompt showing of a detained suspect at the scene of arrest has a very valid function: to prevent the mistaken arrest of innocent persons.").

Indeed, an officer must "make 'immediate reasonable efforts to confirm the suspect's identity'" if the officer has or should have doubts about whether the detained individual is the suspect. *Bautista*, 23 F.3d at 730 (quoting *United States v. Valez*, 796 F.2d 24, 27 (2d Cir. 1986)). For example, identification evidence is properly admitted when it is based on a show-up procedure "held in close temporal and geographic proximity to the crime scene." *Brisco*, 565

---

[24] Even if an identification procedure is unduly suggestive, independent indicia of the reliability of identification evidence may nonetheless justify admission of the identification. *See Perry*, 565 U.S. at 240; *Brathwaite*, 432 U.S. at 114. Courts consider a number of factors, including: (1) "opportunity of the witness to view the criminal at the time of the crime;" (2) "the witness' degree of attention;" (3) "the accuracy of his prior description of the criminal;" (4) "the level of certainty demonstrated at the confrontation;" and (5) "the time between the crime and the confrontation." *Biggers*, 49 U.S. at 199–200 (finding that, under the totality of the circumstances, the show-up identification was reliable even though the confrontation procedure was suggestive); *Brathwaite*, 432 U.S. at 114 (identifying and applying *Biggers* factors).

F.3d at 89 (citing *Bautista*, 23 F.3d at 731); *see also, e.g.*, *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972) (holding that the show-up procedure was necessary to ensure "the immediate release of an innocent suspect and at the same time to enable the police to resume the search for the fleeing culprit while the trail [was] still fresh").

**B.      The State Court Decision Was Not Unreasonable**

The petitioner argues that the state courts unreasonably applied clearly established federal law when they rejected his identification claim.  (*See* ECF No. 17 at 13–37.)  He contends that the show-up was unduly suggestive because the victim knew that the police had someone in custody and saw the knife and the stolen cell phone before he identified the petitioner.  (ECF No. 5 at 60; ECF No. 17 at 16, 18, 26.)  Moreover, the petitioner was handcuffed and between two police officers when the victim saw him.  Under these circumstances, the petitioner claims, the identification should have been suppressed.

Whether a state court unreasonably applied a federal legal standard depends in large part on the specificity of the standard in question.  "Applying a general standard to a specific case can demand a substantial element of judgment," as opposed to a more exacting and specific standard requiring a more formulaic application.  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  In other words, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Id.*  Here, a court decides whether an identification procedure violates due process using "an extraordinarily general standard that hews closely to the facts of a particular case and turns on a court's judgment in evaluating those facts."  *Brisco*, 565 F.3d at 90 (citing *Simmons*, 390 U.S. at 384); *see also Simmons,* 390 U.S. at 384 (declining to impose blanket prohibition on specific identification procedure and holding instead that "each case must be considered on its own facts").

30

The state court's decisions were not unreasonable.  *See* 28 U.S.C. § 2254(d)(1).  The Appellate Division observed that the show-up took place 30 minutes after the robbery and eight blocks from the crime scene.  (SR 244 ("Show-up procedures, although generally disfavored, are permissible where employed in close spatial and temporal proximity to the commission of the crime for the purpose of securing a prompt and reliable identification." (citing *People v. Duuvan*, 77 N.Y.2d 541, 544 (1991); *People v. Castro*, 149 A.D.3d 862, 863 (2d Dep't 2017)))).)  As the suppression court pointed out, the victim had just declined to identify a different person that the police stopped.  (H. Tr. 81–82.)  *See also Bautista*, 23 F.3d at 729–30.

Moreover, "there was ample 'corroborative evidence' of [the petitioner's] guilt," even apart from the testimony about the victim's show-up identification.  *Ball v. Stevenson*, No. 19-CV-5310, 2021 U.S. Dist. LEXIS 4077, at *37 (E.D.N.Y. Jan. 8, 2021).  Although by the time of the trial, the victim could no longer identify the petitioner, his brother identified him in court as the man that he and the victim followed minutes after the robbery.  In addition, the petitioner had the victim's property — his backpack, his wallet and cell phone — as well as the 12-inch knife that the victim identified as the weapon used to rob him.  In short, the Appellate Division's finding that the show-up identification procedure was not unduly suggestive was reasonable.  *See id.* at *38 ("[I]t would have been reasonable for the Appellate Division to rely on [the corroborative] evidence [of the petitioner's guilt] as a factor in 'determining the independent reliability of an eyewitness identification.'" (quoting *Brisco*, 565 F.3d at 95)).

31

## CONCLUSION

For these reasons, the petition for writ of habeas corpus is denied, and the case is dismissed.  A certificate of appealability will not be issued.  *See* 28 U.S.C. § 2253(c).  The Court respectfully directs the Clerk of Court to close the case.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       May 3, 2024